IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:09-CV-187-D

NATIVE ANGELS HOME CARE )
AGENCY, INC., )
)
Plaintiff, )
)
v. )                    **ORDER**
)
KATHLEEN SEBELIUS, )
)
Defendant. )

Native Angels Home Care Agency, Inc. ("Native Angels" or "plaintiff"), a Medicare-certified hospice provider, filed suit against Kathleen Sebelius, Secretary of the U.S. Department of Health and Human Services ("Secretary" or "defendant") and contends that 42 C.F.R. § 418.309(b)(1) is invalid and contrary to law. For purposes of calculating a hospice provider's Medicare-reimbursement "cap" for a fiscal year, 42 C.F.R. § 418.309(b)(1) dictates how to determine the number of Medicare beneficiaries that a hospice provider has serviced in that fiscal year. According to Native Angels, 42 C.F.R. § 418.309(b)(1) conflicts with the calculation that Congress expressly mandates in 42 U.S.C. § 1395f(i)(2)(C). Thus, Native Angels seeks summary judgment [D.E. 14] as to its claim that 42 C.F.R. § 418.309(b)(1) is invalid and contrary to law. Secretary Sebelius disagrees and has filed a cross-motion for summary judgment [D.E. 19]. Native Angels also seeks a preliminary injunction [D.E. 16] as to the Secretary's calculations for fiscal year 2007.

As explained below, the court grants Native Angels' motion for summary judgment, denies Secretary Sebelius' cross-motion for summary judgment, and denies Native Angel's motion for preliminary injunction as moot.

## I.

Native Angels is a North Carolina corporation, and a Medicare-certified hospice provider based in Robeson County, North Carolina. See Jacobs-Ghaffar Aff. ¶¶ 2, 7; Compl. ¶¶ 1, 6–7; Answer ¶¶ 6–7; Def.'s Summ. J. Mem. 9. Native Angels provides hospice services to terminally ill Medicare beneficiaries. Jacobs-Ghaffar Aff. ¶ 5. In connection with such services, Native Angels submits Medicare claims and receives Medicare payments. See id. ¶¶ 12–13; Def.'s Summ. J. Mem. 9.

The U.S. Department of Health and Human Services ("HHS") is the federal agency that administers Medicare and reimburses hospice providers for services rendered to Medicare beneficiaries. The fiscal year for hospice providers, i.e., the period for which the Medicare reimbursements are calculated, runs from November 1 to October 31. During the 2007 fiscal year, which ran from November 1, 2006 to October 31, 2007, Native Angels provided hospice care to 60 Medicare beneficiaries who first had been admitted during the 2006 fiscal year. See Jacobs-Ghaffar Aff. ¶ 12; Compl. ¶ 39. HHS paid Native Angels for these beneficiaries' hospice care at the time Native Angels provided it. See Jacobs-Ghaffar Aff. ¶ 12.

In April 2009, HHS, through its fiscal intermediary,[1] notified Native Angels that, based upon the beneficiary-spending-cap calculation established in 42 C.F.R. § 418.309(b)(1), Native Angels exceeded the beneficiary-spending cap for the 2007 fiscal year in the amount of $3,897,750. Def.'s Summ. J. Mem., Ex. A ("Ex. A") at 32–35; see Jacobs-Ghaffar Aff. ¶ 13. Thus, HHS, through its fiscal intermediary, demanded that Native Angels return $3,897,750 of the payments that Native Angels received during the 2007 fiscal year. Ex. A at 32–35; Jacobs-Ghaffar Aff. ¶ 13.

---

[1]A "fiscal intermediary" is an insurance company that contracts with the Secretary to act on her behalf in processing, reviewing, and paying Medicare claims. See Baylor Univ. Med. Ctr. v. Heckler, 758 F.2d 1052, 1056 n.5 (5th Cir. 1985) (citing 42 U.S.C. § 1395h); Hospice of N.M., LLC v. Sebelius, 691 F. Supp. 2d 1275, 1279 n.1 (D.N.M. 2010).

2

Upon receiving this payment demand, Native Angels began to monitor the beneficiary-spending-cap allocation for each fiscal year in order to determine whether it would be in Native Angels' financial interest to admit new patients at the end of the "cap year" (i.e., in August and September). Jacobs-Ghaffar Aff. ¶ 16. To do so, Native Angels' staff determines the date on which Native Angels should admit each patient in light of the potential impact of each patient's diagnosis on the beneficiary-spending-cap allocation as calculated under 42 C.F.R. § 418.309(b)(1). Id. Additionally, Native Angels has hired an accountant specializing in beneficiary-spending-cap issues to advise Native Angels about staying beneath the cap. See id. ¶ 16.

In September 2009, Native Angels appealed HHS' beneficiary-spending-cap calculation for the 2007 fiscal year to the Provider Reimbursement Review Board ("PRRB"), arguing that HHS' calculation is incorrect and that 42 C.F.R. § 418.309(b)(1) is invalid. Jacobs-Ghaffar Aff. ¶ 17; see Ex. A at 12–29. Native Angels also requested "expedited judicial review," which allows the PRRB to certify that it lacks the authority to decide a "question of law or regulations relevant to the matters in controversy." 42 U.S.C. § 1395oo(f)(1); see Ex. A at 30–31. On October 1, 2009, the PRRB determined that there were no findings of fact for it to resolve, it was bound by 42 C.F.R. § 418.309(b)(1), and it was "without the authority to decide the legal question of whether the regulation, 42 C.F.R. § 418.309(b)(1), is invalid." Ex. A at 1–2. Accordingly, the PRRB granted expedited judicial review of the validity of 42 C.F.R. § 418.309(b)(1). Ex. A at 2; see 42 U.S.C. § 1395oo(f)(1).[2]

On November 18, 2009, Native Angels filed a complaint in this court against the Secretary, seeking declaratory and injunctive relief [D.E. 1]. Native Angels asserts that 42 C.F.R. § 418.309(b)(1) is contrary to Congress' statutory mandate under 42 U.S.C. § 1395f(i)(2)(C),

---

[2]The PRRB also concluded that there were "other issues under dispute" and that the case would remain open. Ex. A at 2. Nonetheless, the PRRB's determination that it did not have authority to decide whether 42 C.F.R. § 418.309(b)(1) is invalid creates a right to judicial review of that issue. See 42 U.S.C. § 1395oo(f)(1); see also 42 C.F.R. § 405.1842.

3

arbitrary and capricious, and constitutes an unlawful taking in violation of the Fifth Amendment.

On April 23, 2010, Native Angels moved for summary judgment on the validity of 42 C.F.R. § 418.309(b)(1) [D.E. 14]. On May 24, 2010, the Secretary responded in opposition and also filed a motion for summary judgment on the validity of 42 C.F.R. § 418.309(b)(1) [D.E. 19, 20]. Native Angels filed a response in opposition to the Secretary's motion [D.E. 22]. Additionally, Native Angels has moved for a preliminary injunction as to the calculation for fiscal year 2007 [D.E. 16]. The Secretary has responded in opposition [D.E. 18] and Native Angels has replied [D.E. 21].

II.

Initially, the Secretary argues that Native Angels lacks standing to challenge regulation 42 C.F.R. § 418.309(b)(1) because Native Angels "has not shown what concrete and actual 'harm' it has suffered" that is "attributable" to regulation 42 C.F.R. § 418.309(b)(1). See Def.'s Summ. J. Mem. 11–17.

To establish Article III standing, a plaintiff must show: (1) that the plaintiff has "'suffered an injury in fact — an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;'" (2) "'a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;'" and (3) that it is "'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–61 (1992)). "The standing doctrine, of course, depends not upon the merits, but on whether the plaintiff is the proper party to bring the suit." McBurney v. Cuccinelli, 616 F.3d 393, 402 (4th Cir. 2010) (quotation omitted). The party seeking to establish standing bears the burden of demonstrating standing. Chambers Med. Techs. of S.C., Inc, 52 F.3d at 1265.

4

Native Angels' business suffers sufficient adverse effects from the enforcement of 42 C.F.R. § 418.309(b)(1)'s beneficial-spending-cap calculation, including a higher repayment for fiscal year 2007 (meaning lower Medicare-reimbursement payments for the 60 Medicare beneficiaries that Native Angels cared for in fiscal year 2007 who first had been admitted during fiscal year 2006) and increased costs to monitor Native Angels' compliance. See, e.g., Chambers Med. Techs. of S.C., Inc, 52 F.3d at 1265–66. Such costs are sufficiently traceable to the enforcement of regulation 42 C.F.R. § 418.309(b)(1) to satisfy Article III standing. See, e.g., Chambers Med. Techs. of S.C., Inc, at 1265. Native Angels has shown (1) injury in fact (reduced payment for 60 Medicare beneficiaries it has served and greater monitoring costs); (2) causation (HHS' employing regulation 42 C.F.R. § 418.309(b)(1)'s calculation resulted in such costs and reduced payments); and (3) redressability (invalidation of regulation 42 C.F.R. § 418.309(b)(1) would remedy Native Angels' injury). See, e.g., Defenders of Wildlife, 504 U.S. at 561–62; Russell-Murray Hospice, Inc. v. Sebelius, No. 09-2033 (RMU), 2010 WL 2814411, at *7–10 (D.D.C. 2010) (concluding that hospice provider had standing to challenge 42 C.F.R. § 418.309(b)(1)); L. A. Haven Hospice, Inc. v. Leavitt, No. CV 08-4469-GW(RZx), 2009 WL 5868513, at *3–4 (C.D. Cal. July 13, 2009) (same). Accordingly, Native Angels has standing to challenge regulation 42 C.F.R. § 418.309(b)(1).

III.

The parties have filed cross-motions for summary judgment [D.E. 14, 19]. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus.

5

Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). In determining whether a genuine issue of material fact exists for trial, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). When considering cross-motions for summary judgment, a court evaluates each motion using the standard set forth above. See, e.g., United States v. Bergbauer, 602 F.3d 569, 574 (4th Cir. 2010); Simmons v. Prudential Ins. Co. of Am., 564 F. Supp. 2d 515, 520 (E.D.N.C. 2008).

## A.

Native Angels argues that regulation 42 C.F.R. § 418.309(b)(1) and HHS' application of regulation 42 C.F.R. § 418.309(b)(1) are invalid as a matter of law. See Pl.'s Mem. Supp. Summ. J. 11–18. The Secretary disagrees. See Def.'s Summ. J. Mem. 17–24.

Initially, the parties dispute whether to apply Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). In Chevron, the Supreme Court held that

> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First . . . is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 842–43; see Am. Online, Inc. v. AT & T Corp., 243 F.3d 812, 816–17 (4th Cir. 2001).

The Secretary argues that this court should review 42 C.F.R. § 418.309(b)(1) under the Administrative Procedure Act's "arbitrary and capricious" standard. See Def's Summ. J. Mem. 10 (discussing 5 U.S.C. § 706).[3] The APA authorizes a court "to reverse an agency's action if it acted

---

[3]5 U.S.C. § 706 states:

To the extent necessary to decision and when presented, the reviewing court shall

arbitrarily or capriciously in adopting its interpretation by failing to give a reasonable explanation for how it reached its decision." Tex. Office of Pub. Util. Counsel v. FCC, 183 F.3d 393, 410 (5th Cir. 1999). "'Arbitrary and capricious' review under the APA differs from Chevron step-two review because it focuses on the reasonability of the agency's decision-making processes rather than on the reasonability of its interpretation." Id. Of course, in some cases, the Chevron analysis and the APA's "arbitrary and capricious" inquiry overlap, "because whether an agency action is 'manifestly contrary to statute' is important both under Chevron and under [the APA]." Arent v. Shalala, 70

---

decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

7

F.3d 610, 616 n.6 (D.C. Cir. 1995); see Shays v. FEC, 528 F.3d 914, 919 (D.C. Cir. 2008). For example, the overlap between review under Chevron and under the APA is present where a party contends that the agency promulgated a regulation that conflicts with the statute which the agency purports to administer. See, e.g., Shays, 528 F.3d at 919; Arent, 70 F.3d at 616 n.6.

The court recognizes that "Chevron deference is a tool of statutory construction whereby courts are instructed to defer to the reasonable interpretations of expert agencies charged by Congress to fill any gap left, implicitly or explicitly, in the statutes they administer." Am. Online, Inc., 243 F.3d at 817 (quotation omitted). "Chevron deference is based on the notion that when Congress delegates to an agency the authority to implement a statute, Congress implicitly delegates the authority to interpret the statute." Melvin v. Astrue, 602 F. Supp. 2d 694, 703 (E.D.N.C. 2009) (citing Chevron U.S.A., Inc., 467 U.S. at 865–66). "Chevron is grounded in the principle that an agency is entitled to some leeway in fulfilling Congress' mandates to the agency, as reflected in the statutes that the agency administers." Melvin, 602 F. Supp. 2d at 703. Accordingly, where an agency (such as HHS) promulgates a regulation (such as 42 C.F.R. § 418.309(b)(1)) based on its interpretation of a statute (such as 42 U.S.C. § 1395f(i)(2)(C)), the Chevron standard appears to apply. See, e.g., Am. Online, Inc., 243 F.3d at 817. However, even if Chevron did not apply, and this court focused solely upon whether the Secretary's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A) (emphasis added)), the result would be the same.

Here, the court initially addresses whether Congress has directly spoken to whether the number of Medicare beneficiaries may be calculated, for purposes of hospice-provider reimbursement, in the manner that 42 C.F.R. § 418.309(b)(1) requires. If the intent of Congress is clear in the statute, the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. Moreover, ease of agency administration does not authorize an agency to ignore "the administrative structure that Congress enacted into law." Ragsdale v. Wolverine World Wide,

8

535 U.S. 81, 91 (2002) (quotation omitted).

In 42 U.S.C. § 1395f(i)(2), Congress amended the Medicare Act in 1982 to provide coverage for hospice care. See Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 122, 96 Stat. 324 (codified at 42 U.S.C. § 1395c). To qualify for hospice care benefits, a Medicare beneficiary must be terminally ill, meaning that the "individual's life expectancy is 6 months or less." 42 U.S.C. § 1395x(dd)(3)(A). If a terminally ill Medicare beneficiary elects to receive hospice care, the individual waives all rights to Medicare payments for treatments of the underlying illness. Id. § 1395d(d)(2)(A). To continue to receive benefits for hospice care, the Medicare beneficiary must elect to receive hospice care for subsequent benefit periods; the first two periods last ninety days, and any subsequent periods last sixty days. Id. § 1395d(d)(1). There is no limit on the number of benefit periods for which a Medicare beneficiary may request hospice care. Id. § 1395d(a)(4), (d)(1). However, the Medicare Act requires that each election is accompanied by a certification from the beneficiary's physician that the beneficiary is suffering from a terminal illness. Id. § 1395f(a)(7).

Under 42 U.S.C. § 1395f(i)(2), the amount that Medicare will reimburse a hospice provider for a fiscal year is limited to a "cap amount" for the fiscal year "multiplied by the number of medicare beneficiaries in the hospice program in that year (determined under subparagraph (C))." 42 U.S.C. § 1395f(i)(2)(A). Section 1395f(i)(2)(C) states:

> For purposes of subparagraph (A) [concerning Medicare reimbursement for hospice care], the "number of medicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year or under a plan of care established by another hospice program.

42 U.S.C. § 1395f(i)(2)(C) (emphasis added). The statute requires that when calculating the number of Medicare beneficiaries for a hospice provider in a fiscal year, the number of beneficiaries should

9

be "reduced to reflect the proportion of hospice care that each such individual provided in a previous or subsequent accounting year . . . ." See id. Thus, if a beneficiary received hospice care for only part of the year, the number of beneficiaries must be proportionally reduced for purposes of calculating the hospice provider's "cap amount."

Based on 42 U.S.C. § 1395f(i)(2), the Secretary promulgated 42 C.F.R. § 418.309 to provide a method for calculating the hospice cap amount.[4] Under 42 C.F.R. § 418.309(b)(1), an individual is counted as a beneficiary only in a single year, regardless of whether he or she receives hospice care

---

[4] 42 C.F.R. § 418.309 states:

The hospice cap amount is calculated using the following procedures:

(a) The cap amount is $6,500 per year and is adjusted for inflation or deflation for cap years that end after October 1, 1984, by using the percentage change in the medical care expenditure category of the Consumer Price Index (CPI) for urban consumers that is published by the Bureau of Labor Statistics. This adjustment is made using the change in the CPI from March 1984 to the fifth month of the cap year. The cap year runs from November 1 of each year until October 31 of the following year.

(b) Each hospice's cap amount is calculated by the intermediary by multiplying the adjusted cap amount determined in paragraph (a) of this section by the number of Medicare beneficiaries who elected to receive hospice care from that hospice during the cap period. For purposes of this calculation, the number of Medicare beneficiaries includes--

(1) Those Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with § 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

(2) In the case in which a beneficiary has elected to receive care from more than one hospice, each hospice includes in its number of Medicare beneficiaries only that fraction which represents the portion of a patient's total stay in all hospices that was spent in that hospice. (The hospice can obtain this information by contacting the intermediary.)

42 C.F.R. § 418.309.

in multiple years. Specifically, 42 C.F.R. § 418.309(b)(1) states that "the number of Medicare beneficiaries" receiving hospice care in a fiscal year includes:

> [t]hose Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care, in accordance with [42 C.F.R.] § 418.24, from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

42 C.F.R. § 418.309(b)(1).[5]

Despite the statutory language of 42 U.S.C. § 1395f(i)(2)(C), 42 C.F.R. § 418.309(b)(1) fails to "reduce[] [the number of Medicare beneficiaries] to reflect the proportion of hospice care that each . . . individual was provided in a previous or subsequent accounting year." 42 U.S.C. § 1395f(i)(2)(C). Rather, the regulation includes a Medicare beneficiary in a fiscal year based upon the date that the beneficiary elects to receive hospice care. This calculation method directly contravenes Congress' express intent by not allocating Medicare benefits on an individual basis, by not allocating benefits across years of service, and by not providing benefits for years of care subsequent to the fiscal year during which a Medicare beneficiary elects to receive hospice care. See, e.g., Russell-Murray Hospice, Inc., 2010 WL 2814414, at *11–13; Hospice of N.M., LLC, 691 F. Supp. 2d at 1288–93. Accordingly, the regulation's calculation method contradicts Congress' express requirement that the Medicare-beneficiary calculation include proportional allocation for an individual beneficiary among accounting years. Compare 42 U.S.C. § 1395f(i)(2)(C), with 42 C.F.R. § 418.309(b)(1); see, e.g., Russell-Murray Hospice, Inc., 2010 WL 2814414, at *12–13; Hospice of N.M., LLC, 691 F. Supp. 2d at 1288–93.

---

[5]The regulation contemplates an average length of hospice services per patient of 70 days. As a result, a hospice provider receives 100% of the statutory allowance during the current fiscal year for patients electing to receive hospice care on or before September 27. Additionally, a hospice provider receives 100% of the statutory allowance during the subsequent year for patients electing to receive hospice care after September 27. See Medicare Program; Hospice Care, 48 Fed. Reg. 56008, 56022 (Dec. 16, 1983).

In light of the plain language of 42 U.S.C. § 1395f(i)(2)(C), Congress has "directly spoken" to the "precise question," and regulation 42 C.F.R. § 418.309(b)(1) conflicts with Congress' mandate. See, e.g., Russell-Murray Hospice, Inc., 2010 WL 2814414, at *12–13; Hospice of N.M., LLC, 691 F. Supp. 2d at 1288–92. As such, the regulation is invalid, and Native Angels is entitled to summary judgment on this issue. See, e.g., Russell-Murray Hospice, Inc., 2010 WL 2814411, at *11–14; Hospice of N.M., LLC, 691 F. Supp. 2d at 1284–86 (collecting cases from various district courts invalidating 42 C.F.R. § 418.309 (b)(1)). Thus, the court grants Native Angels' summary-judgment motion [D.E. 14] as to its claim that 42 C.F.R. § 418.309(b)(1) is invalid and contrary to law, and denies the Secretary's cross motion as to 42 C.F.R. § 418.309(b)(1) [D.E. 19].[6]

B.

Next, the court addresses the remedy. Native Angels requests the following relief: a declaration that 42 C.F.R. § 418.309(b)(1) is contrary to law and is invalid; a declaration that HHS' calculation of Native Angels' hospice-provider cap for fiscal year 2007 is invalid; an order requiring HHS to recalculate Native Angels' hospice-provider cap for fiscal year 2007 based on a formula that is lawful; an order stating that this court retains jurisdiction until the Secretary has determined Native Angels' repayment amount for fiscal year 2008; and an order enjoining HHS from prospective use of 42 C.F.R. § 418.309(b)(1) to calculate the hospice-cap liability of Native Angels or any other hospice provider nationwide. See Compl. 13–14.

---

[6]In the summary-judgment motions and accompanying memoranda, the parties fail to expressly address Native Angels' Fifth Amendment takings argument. Defendant, however did seek summary judgment and assert that plaintiff is not entitled to any relief from this court. Def.'s Summ. J. Mem. 24. Thus, the court construes defendant's motion as seeking summary judgment on plaintiff's takings claim. Having considered the claim, the court grants summary judgment to defendant on plaintiff's takings claim. See, e.g., Bowles v. Willingham, 321 U.S. 503, 517–18 (1944); Garelick v. Sullivan, 987 F.2d 913, 916 (2d Cir. 1993); Whitney v. Heckler, 780 F.2d 963, 972 (11th Cir. 1986); Hospice of N.M., LLC, 691 F. Supp. 2d at 1293.

As for the requested declaratory relief, the court declares that 42 U.S.C. § 418.309(b)(1) is contrary to law and is invalid. The court also declares that the Secretary's calculation of Native Angel's cap liability for fiscal year 2007 is invalid.

As for Native Angels' requested injunctive relief, injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Califano v. Yamasaki, 442 U.S. 682, 702 (1979); Kentuckians for Commonwealth Inc. v. Rivenburgh, 317 F.3d 425, 436 (4th Cir. 2003). As such, "an injunction should be carefully addressed to the circumstances of the case." Kentuckians for Commonwealth Inc., 317 F.3d at 436 (alteration and quotation omitted). Specifically, "[a]lthough injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation." Id. (quotation omitted). Accordingly, the court enjoins HHS from using 42 U.S.C. § 418.309(b)(1) to calculate the hospice cap liability of Native Angels and remands this case to HHS for a recalculation of Native Angels' cap liability for fiscal year 2007. The court retains jurisdiction until the Secretary has determined Native Angels' repayment amount, to ensure that HHS adopts a lawful calculation method, and to ensure that HHS applies the new calculation method to Native Angels in a lawful fashion. However, the court declines Native Angels' request for a nationwide injunction concerning the challenged regulation. See, e.g., Kentuckians for Commonwealth Inc., 317 F.3d at 436 (holding that injunction was overbroad where it was "readily apparent that the injury anticipated from future permits [was] far broader than the scope of injury for which [the plaintiff] sought relief"); Va. Soc'y for Human Life, Inc. v. FEC, 263 F.3d 379, 393 (4th Cir. 2001) (holding that issuing nationwide injunctive relief was an abuse of discretion because it was broader than necessary to afford relief to the single plaintiff in the case); Russell-Murray Hospice, Inc., 2010 WL 2814411, at *14 (granting injunctive relief concerning application of 42 U.S.C. § 418.309(b)(1) to plaintiff hospice provider, but declining to enter a nationwide injunction); Hospice of N.M., LLC, 691 F. Supp. 2d at 1294 (granting injunctive relief concerning application

13

of 42 U.S.C. § 418.309(b)(1) to plaintiff hospice provider, but declining to enter a nationwide injunction).

Finally, Native Angels moves for a preliminary injunction, seeking to enjoin HHS from withholding Medicare payments to Native Angels in order to recoup the beneficiary-spending-cap overpayment for fiscal year 2007 that HHS calculated under 42 C.F.R. § 418.309(b)(1). In light of the declaratory and injunctive relief awarded and the expectation that the Secretary will comply with this order, the court denies the request for a preliminary injunction as moot [D.E. 16].

## IV.

In sum, the court GRANTS Native Angels' summary-judgment motion [D.E. 14] as to its claim that 42 C.F.R. § 418.309(b)(1) is invalid and contrary to law, DENIES the Secretary's cross-motion for summary judgment as to 42 C.F.R. § 418.309(b)(1) [D.E. 19], and GRANTS the declaratory and injunctive relief set forth in this order. Additionally, the court DENIES Native Angels' motion for preliminary injunction [D.E. 16] as moot. Finally, the court GRANTS summary judgment to the Secretary on plaintiff's Fifth Amendment claim under the Takings Clause. If Native Angels seeks costs and attorney's fees, it may submit such a request in accordance with this court's local rules.

SO ORDERED. This _29_ day of October 2010.

JAMES C. DEVER III
United States District Judge

14